**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**BALTIMORE LUGGAGE COMPANY, Respondent.**

**International Leather Goods, Plastics & Novelty Workers' Union, AFL-CIO, Intervenor.**

**No. 11120.**

United States Court of Appeals Fourth Circuit.

Argued May 31, 1967.

Decided July 11, 1967.

Charles N. Steele, Attorney, N. L. R. B. (Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, and Warren M. Davison, Attorney, N. L. R. B., on brief), for petitioner.

Charles Yumkas, Baltimore, Md. (Jacob Blum, Baltimore, Md., on brief), for respondent.

Max H. Frankle, New York City, (Bernard Yaker, and Vladeck, Elias, Frankle, Vladeck & Lewis, New York City, on brief), for intervenor.

Before SOBELOFF, BRYAN and WINTER, Circuit Judges.

SOBELOFF, Circuit Judge:

The present proceeding was brought by the National Labor Relations Board to enforce its order against the Baltimore Luggage Company requiring it to cease and desist from interfering with its employees' protected concerted activities by threats, interrogations and reprisals in violation of section 8(a) (1) of the National Labor Relations Act, 29 U.S.C. § 158(a) (1), and to reinstate with back pay employee James Gaston, who it found had been discriminatorily discharged in violation of sections 8(a) (1) and (3) of the Act.

The asserted unfair labor practices were responsive to a second union organizing campaign commenced in March, 1965. An earlier campaign in 1959 culminated in union certification, but only after a re-run election ordered by the Board on its finding that the first election was tainted by coercive employer tactics in violation of section 8(a) (1). The union was subsequently decertified following a strike during which most of the employees were permanently replaced.

The genesis of the present case is as follows: On April 12, 1965, the union disclosed to Vice-President Holtzman the names of the twelve employees who comprised its organizing committee. A week later, Holtzman toured the plant and singled out five employees, all committee members, for special comment. According to credited employee testimony, he remarked to a foreman, in the presence of two of the committee members, that "[t]hese are the two trouble makers in your department." Holtzman told a third employee that he could "be bounced out." Of a fourth, he inquired "[i]s there something wrong? What is bothering you, boy? Something wrong with you?", and told the plant supervisor, Wissman, to "keep an eye" on the employee. Final-

ly, he informed the fifth committee member that "[i]f I have any more complaints, you will be putting power screws in [the type of work in which the employee was engaged] on someone else's job." Although Holtzman testified that during the tour he discussed the performance of numerous other employees, he was unable to recall either their names or specifically what he said.

The remarks were defended by the company as having been directed at and motivated solely by a salesman's complaints concerning defects in merchandise traceable to these and other employees. However, the trial examiner, and in turn the Board, relying in part upon the timing of the tour, the suspiciously vague recollection of Holtzman, and the fact that several of the comments rang false on the asserted purpose of merely informing the employees of defective workmanship, concluded that the remarks were in reality veiled threats, in violation of section 8(a) (1).

The Board also adopted the findings of the trial examiner that the company violated section 8(a) (1) when on April 21 a supervisor warned employee Wynn that "[i]f you take part in this union, you will be discharged," and when sometime in May plant manager Wissman, in granting employee Gaston's request for additional leave, gave as the reason that Gaston wasn't involved in the union "mess." The examiner found that this statement contained an implicit threat of reprisal if Gaston should engage in union activity.

Gaston was discharged on July 2. The Board found that this discharge was violative of section 8(a) (3) and, derivatively, section 8(a) (1). Before June 10, Gaston, who had been employed by the company for almost 20 years and who in 1959 had crossed the union picket line, was considered a loyal employee, and, as noted above, had been granted additional leave avowedly because of his past record of opposition to the union. On June 10, however, Gaston's name appeared on a union handbill as a member of the organizing committee. Several

days later, while using a pay phone set aside for the employees, Wissman reprimanded Gaston for talking too long. Wissman told him that he had become a "different" person since the "mess started." Conflicting accounts of the incident were offered, but the trial examiner credited Gaston's version that during the conversation Wissman grabbed his arm and Gaston jerked away, threatening to hit him. Wissman, however, did not report the incident and testified that it was not serious enough to warrant discharge.

Toward the end of June, Gaston developed a tooth abscess, but at the request of his supervisor continued at work for several days. At the end of the week, he informed another supervisor that he intended to have the tooth extracted during the weekend. The extraction was delayed, however, until early the following week. On Monday, as his jaw was swollen and he couldn't talk distinctly, he had a fellow employee report his illness. After the tooth was pulled the pain and swelling persisted, requiring further treatment, and Gaston did not report for work until Friday. He did, however, have a second employee inform the company of the reason for his continued absence. The company does not dispute Gaston's ailments or the receipt of the two calls.

When Gaston reported on Friday, Wissman reprimanded him for not stopping at the plant on the way to or from the dentist and personally notifying the company of the reasons for his absence. According to Wissman, during the interview Gaston threatened to hit him and he discharged Gaston on this account, not for his failure to report the illness in person. Gaston denied the threat and the trial examiner credited his version. The examiner concluded that the insubordination attributed to Gaston had not in fact occurred, and that Wissman's story was a fabrication designed to disguise the true reason for the discharge, namely Gaston's about-face regarding the union.

The employer's sole defense to the 8 (a) (3) violation is that there is no legal basis for holding that the reason assigned for a discharge is a mere pretext where prior misconduct, here the telephone incident, was tolerated "under circumstances which negate any idea that the employer was searching for some false reason to discharge the employee on account of his union activities." NLRB v. Threads, Inc., 308 F.2d 1, 13 (4th Cir. 1962). See also Wellington Mill Division, West Point Mfg. Co. v. NLRB, 330 F.2d 579 (4th Cir. 1964).

In the present factual context the company's defense to the 8(a) (3) charge, based on these two cases, is not supportable. The rule announced in the cases can in no event have any applicability, since the trial examiner expressly credited Gaston's account of the terminal interview with Wissman, in which Gaston denied making any threat. What the examiner meant when he said that the "circumstances strongly indicate that Gaston's *asserted* insubordination was not the real reason for his discharge but a pretext * * *," was that the claimed insubordination itself was manufactured out of whole cloth. (Emphasis supplied.)

The employer obliquely suggests that its leniency in respect to one infraction ought not to be rewarded by barring it from the exercise of discipline for a later violation. The argument might not be without force in an appropriate factual setting. But here not only was the earlier incident of a most trivial character, as the supervisor's testimony shows, but the fact finder has rejected as false the claim that the second incident ever happened.

Our problem does not resemble that of the above-cited cases, where a choice had to be made as to the true motivation for a duly established action; in such cases there may be room to debate whether, absent independent factual support, there is justification for fastening on the employer a discriminatory motive where it is equally likely that he was actuated by an innocent one. In our

case, however, the express finding is that the claimed event never happened. The finding is not without substantial support, nor is it unreasonable. What would be unreasonable, and plainly in excess of our authority, is a holding, as the employer proposes, that a fictive threat motivated the discharge. It is not within the province of the court to say that the discharge happened because of an alleged threat by the employee, and not for the reason found by the Board, when the finding is that in point of fact no threat was made.

The examiner's resolution of the issue of veracity arising between Wissman and Gaston is buttressed by an examination of the original of the report submitted by Wissman himself. As the report is reproduced in the joint appendix, it purports to have been signed by Gaston— an impressive circumstance seemingly corroborating Wissman. Yet the original document does not bear Gaston's signature. The explanation might be advanced that the discrepancy was not deliberate, but resulted from some inadvertence on the part of the printer. Not so readily explainable, however, is the curious fact that the report is dated June 28, 1965, and represents itself as the record of an event which, if it occurred at all, concededly did not happen till some days later, on July 2.

After carefully reviewing the entire record, we are of the opinion that there is substantial, indeed compelling, evidence to support each of the violations found by the Board, and its order will be

Enforced.

ALBERT V. BRYAN, Circuit Judge (dissenting):

After reading all the testimony, I cannot agree that substantial evidence supports the examiner and the Board in finding that the respondent has been guilty of unfair labor practices. Hence, I would not enforce the order now on review.